## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

KEAN, MILLER, HAWTHORNE, D'ARMOND          CIVIL ACTION
MCCOWAN & JARMAN, L.L.P.

**VERSUS**

NATIONAL FIRE INSURANCE COMPANY             NO. 06-770-C-M2
OF HARTFORD

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in chambers in Baton Rouge, Louisiana, August 2, 2007.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEAN, MILLER, HAWTHORNE, D'ARMOND** | **CIVIL ACTION** |
| **MCCOWAN & JARMAN, L.L.P.** | |
| **VERSUS** | |
| **NATIONAL FIRE INSURANCE COMPANY** | **NO. 06-770-C-M2** |
| **OF HARTFORD** | |

**MAGISTRATE JUDGE'S REPORT**

This matter is before the Court on the Motion for Partial Summary Judgment (R. Doc. 8) filed by plaintiff, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P. ("Kean Miller"). Defendant, National Fire Insurance Company of Hartford ("National Fire"), has filed an opposition (R. Doc. 21) to Kean Miller's motion, a Cross-Motion for Summary Judgment (R. Doc. 18), and a Motion for Oral Argument (R. Doc. 24) relative to its motion and opposition. Kean Miller has also filed an opposition to National Fire's cross-motion.

**FACTS & PROCEDURAL BACKGROUND**

National Fire issued to Kean Miller a Business Account Package Insurance Policy with effective dates of September 1, 2004 to September 1, 2005. In this suit, Kean Miller contends that, as a result of actions by civil authorities related to Hurricane Katrina coming ashore, it officially closed its Baton Rouge office on August 29, 2005. Kean Miller then filed a claim with National Fire under the above policy to recover its business losses incurred on August 29, 2005. In support of that claim, Kean Miller relied upon a "civil authority" coverage provision contained in the National Fire policy which provides the following, in pertinent part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due

2

> to direct physical loss of, or damage to, property other than at
> the described premises, caused by or resulting from a Covered
> Cause of Loss."

*See*, National Fire policy, attached to Kean Miller's motion as Exhibit A.

National Fire denied Kean Miller's claim, concluding that the action taken by civil authority "was not an order prohibiting access to your location, but was a recommendation," which "would not trigger the [c]ivil [a]uthority coverage of your policy." *See*, National Fire denial letter dated July 24, 2006, attached to Kean Miller's motion as Exhibit B. Following National Fire's denial, Kean Miller made a second attempt to obtain coverage and recover for its alleged losses. National Fire responded by letter dated September 1, 2006, wherein it denied coverage on the following basis:

> Regardless of the difference of opinion about the use of the
> terms "action of civil authority" and whether or not the orders
> are recommendations that citizens should refrain from using
> public roads except for emergencies constitutes prohibition of
> access to the described premises, I understand there was no
> damage in the area such that the other provisions would have
> been met (*e.g.*, no physical damage that prevented access,
> etc.)

*See*, National Fire denial letter dated September 1, 2006, attached to Kean Miller's motion as Exhibit C. Kean Miller subsequently filed this suit against National Fire to recover for its business losses under the policy. Through the present motion for partial summary judgment on the issue of liability (other than bad faith claims), Kean Miller seeks a legal determination that the policy's business interruption coverage pursuant to the "civil authority" provision was triggered relative to Kean Miller's decision to close its Baton Rouge offices on August 29, 2005.

In response to Kean Miller's motion, National Fire has filed a cross-motion for summary judgment, wherein it contends that coverage does not exist under the "civil authority" provision because:  (1) Kean Miller's management made the voluntary decision to close its Baton Rouge office before Hurricane Katrina came ashore in Louisiana; and (2) Kean Miller failed to produce evidence that any action of "civil authority" prohibited access to the insured premises.

## LAW & ANALYSIS

## I.    Summary judgment standard:

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[1]  Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[2]

---

[1] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence."  *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[2] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law.  *Id.*

4

II.     **Legal standards regarding contract interpretation:**

Because this is a diversity case, the Court is obliged to follow Louisiana law as it believes the Louisiana Supreme Court would interpret it.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  Under Louisiana law, the interpretation of an insurance contract usually is a legal question that can be properly resolved within the framework of a motion for summary judgment.  *Robinson v. Heard*, 809 So.2d 943, 945 (La. 2002); *Lubbock County Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d 239, 242 (5th Cir. 1998).  An insurance policy is an aleatory, nominate contract subject to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Succession of Fannaly v. Lafayette Ins. Co.*, 805 So.2d 1134, 1137 (La. 2002).

The Court's role when interpreting an insurance contract is to determine the common intent of the parties.  *Id.*; *See*, La. Civ. C. Art. 2045.  The parties' intent as reflected by the words in the policy determine the extent of coverage.  *Id.*  When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. La. Civ. C. Art. 2046; *Brown v. Manhattan Life Ins.* Co., 791 So.2d 74,77 (La. 2001); Amoco *Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 667 (5th Cir. 1999). The intent of the parties to an insurance contract is to be determined "in accordance with the general, ordinary, plain and proper meaning [of the words] . . . unless [they] have acquired a technical meaning." *Carbon v. Allstate Ins. Co.*, 719 So.2d 437, 440 (La. 1998); La. Civ. C. art. 2047.  Insurance policies are construed to effect, not deny, coverage, and any ambiguity should be interpreted in favor of the insured.  *Doerr v. Mobil Oil Corp.*, 774 So.2d

119, 124-25 (La. 2000), *opinion corrected on reh'g*, 782 So.2d 573 (La. 2001); *Succession of Fannaly*, at 1138.

### III.    Application of legal standards and relevant jurisprudence to present case:

To trigger the Civil Authority Clause at issue in this case, four (4) elements must be satisfied.  Specifically, there must be a loss of business income:  (1) caused by an action of civil authority; (2) the action of civil authority must prohibit access to the described premises of the insured; (3) the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and (4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.

Construing the contractual terms in accordance with their ordinary and plain meaning, the Court finds that Kean Miller has submitted evidence that "an action of civil authority" was taken in response to Hurricane Katrina.  Kean Miller has submitted evidence indicating that Governor Kathleen Blanco declared a state of emergency in Louisiana on August 26, 2005 as a result of the hurricane, and both the Louisiana State Police and local government officials were "asking" and "encouraging" residents to stay off the streets on August 29, 2005, if possible.[3]  The Civil Authority Clause in question does not require a

---

[3] *See*, Exhibits G, H, and I to Kean Miller's motion:  Proclamation 48 KBB 2005 by Governor Kathleen Blanco declaring a state of emergency in Louisiana relative to the hurricane because it posed an imminent threat to the state, carrying severe storms, high winds, and torrential rain; a Louisiana State Police News Release dated August 29, 2005, in which the State Police "encourag[ed] everyone to stay where they are and not attempt to re-enter the streets until further notice" because that was "the only way to ensure [residents'] safety;" and a statement in a local newspaper article by the Chief Administrative Officer for the East Baton Rouge Mayor-President, "ask[ing] residents to refrain from venturing out after the storm passes to sightsee."

*See also,* Exhibit F to Kean Miller's Motion: Fax transmission from East Baton Rouge Parish Office of Homeland Security and Emergency Preparedness which indicates that, as of August 28, 2005 at 7:00 p.m.,

formal order to be issued by civil authorities; thus, the advisories given to remain off of the streets could be considered an "action of civil authority" that would not have been given but for Hurricane Katrina.  *See, Narricot Industries, Inc. v. Fireman's Fund Ins. Co.*, 2002 WL 31247972 (E.D. Pa. 2002)(where the court held that a Civil Authority Clause requiring an "action of civil authority" did not require a formal order or even a written order since the phrase "does not mention an order at all."   The court noted that "civil authority" encompasses "civil officers in whom a portion of the sovereignty is vested and in whom the enforcement of municipal regulations or the control of the general interest of society is confided."   Coming within the ambit of that definition would be police officers, highway patrol officers, and other town employees that the town mayor or manager allows to conduct public affairs.   The court held that, if the word "action" is ambiguous, such ambiguity must be resolved in favor of the insured).   Accordingly, resolving any ambiguity relative to the word "action" in favor of Kean Miller, the Court finds that the first element required to trigger the Civil Authority Clause in this case is satisfied.

However, the Court finds that the second element of the Civil Authority Clause is not met in this case because the advisories and recommendations given did not actually "prohibit access" to the insured premises.   Instead, they merely recommended or encouraged that residents remain off the streets if possible.   Kean Miller has not offered any evidence that its employees, or any other residents of Baton Rouge, were specifically prohibited from driving on the streets and/or traveling to and entering its business premises.

---

Hurricane Katrina was a Category 5 hurricane with maximum winds of 160 miles per hour; that a flood watch had been issued to include East Baton Rouge Parish for Sunday, August 28, 2005 and Monday, August 29, 2005; that there was no curfew or road closures as of Sunday, August 28, 2005, but that law enforcement was asking that residents "stay off [the] streets if possible;" and that City Parish and state agencies in East Baton Rouge Parish would be closed on August 29, 2005.

In fact, National Fire has produced a copy of Kean Miller's discovery responses, wherein it is conceded that, on August 29, 2005, two of Kean Miller's employees entered its office to restart the computer system and that other tenants of the building in which the Kean Miller office is contained entered the building on that date "in very limited numbers."  *See*, Kean Miller's Responses to Requests for Admission Nos. 3 and 6.

Although the Court was unable to locate any cases in Louisiana involving a Civil Authority Clause identical to that in the present case, the Court located several cases from other jurisdictions, and in each of those cases, the court determined that the clause at issue was unambiguous and further held that coverage did not exist under such a clause unless the action of civil authority *actually* and *completely* prohibited access to the insured premises.  For example, in *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137 (10th Cir. 2004), certain insured hotel operators brought suit against their insurer for denying their claims for loss of business income sustained when customers of their hotels canceled visits due to cancellation of airline flights by the Federal Aviation Administration ("FAA") in the wake of the 9/11 attack.  The hotel operators relied upon an identical Civil Authority Clause to that in the present case.  The court held that there was no dispute that the FAA's order prohibiting the flying of airplanes qualified as an "action of civil authority." However, even though the order stopped the flying of airplanes, it did not "prohibit access" to hotel operations. The court explained that the plain and ordinary meaning of the phrase "prohibits access" is to "formally forbid, esp. by authority" or to "prevent."  Thus, in order for the Civil Authority Provision to apply to the hotel operations, it would have to formally and directly forbid or prevent those operations, rather than tangentially affect them.  In other words, the court determined that there must be a "direct nexus" between the civil authority

8

order/action and the suspension of the insured's business for the Civil Authority Provision to apply, and because the FAA's order grounding flights did not itself "prevent, bar, or hinder access to" the plaintiff's hotels, coverage did not exist.  *See also, 730 Bienville Partners, Ltd. v. Assurance Co. of America*, 2002 WL 31996014 (E.D. La. 2002)(holding that a civil authority provision identical to the one in the present case did not apply to a Louisiana hotel whose business was affected by the FAA closure of airports after September 11, 2001, because access to the hotel was not "prohibited" by any order).  *Id.*, at *2.

Similarly, in *TMC Stores, Inc. v. Federated Mutual Insurance Co.*, 2005 WL 1331700 (2005), the Minnesota Court of Appeals, relying upon cases in several other jurisdictions, construed the phrase "prohibits access" in an identical Civil Authority Clause as requiring access to the insured premises to be "completely prohibited," and in *By Development, Inc. v. United Fire & Casualty Co.*, 2006 WL 694991 (D.S.D. 2006), the court explained that limited or hampered access is not the same as "prohibited access" for purposes of the Civil Authority Provision in question.  In *By Development*, a plaintiff sued for lost business income after it closed its business as a result of a wildland fire.  In that case, the Governor of the State of South Dakota issued a verbal evacuation order of Deadwood, South Dakota, on June 29, 2002, which was lifted on July 1, 2002.  On July 1, 2002, Deadwood residents were advised they could return to Deadwood using a particular highway from the north or south.  At the time the evacuation order was lifted for Deadwood, other evacuation orders and road closures remained in effect for areas surrounding Deadwood, and numerous highways and roads leading to Deadwood remained closed or had only restricted travel as of July 1, 2002.  The closures and restrictions were gradually lifted over the next week, and

9

all of the road restrictions and closures in the area caused by the fire were lifted by July 8, 2002. The plaintiff's enterprise in Deadwood was closed and evacuated during the Deadwood evacuation order, and the plaintiff alleged that the evacuation and the road closures and restrictions caused it to have business income loss, even though the evacuation order for Deadwood was lifted by July 1, 2002.

In analyzing the Civil Authority Provision, which is identical to the one at issue herein, the court noted that no other South Dakota courts had interpreted such a clause; however, it obtained guidance from cases out of other jurisdictions which had held the clause to be unambiguous. The court further noted that there was no doubt that the evacuation order constituted an "action of civil authority," and the plaintiff was held to be entitled to business loss coverage during the time period that his business was closed as a result of such order. However, the court found that, once that order was lifted, the mere fact that access to the plaintiff's business may have been limited by the remaining road closures did not warrant coverage under the Civil Authority Clause. *Id.*, at*5 ("Although some road closures around Deadwood continued for some time after [the lifting of the evacuation order], *access* (under the plain and ordinary meaning of the word) to the Plaintiff's property was not *prohibited* (under the plain and ordinary meaning of the word) by any action of civil authority after 8 p.m. on July 1, 2002").

While not containing identical Civil Authority Clauses, other cases involving similar clauses have also held that a direct nexus must exist between the action of the civil authority and the prohibition of access to the insured premises. *See, Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F.Supp.2d 331, 336-37 (S.D.N.Y. 2004)(finding civil authority provision applies only when civil authority actually and completely prohibits access

to the insured premises and not during subsequent days when other traffic restrictions made access to the premises more difficult);[4] *Dixson Produce, LLC v. Nat'l Fire Ins. Co. of Hartford*, 99 P.3d 725, 729 (Okla.Ct.App. 2004)(Even though travel to the business was inconvenient, the business could not recover under civil authority provision unless access was prohibited); *Syufy Enterprises v. Home Insurance Co. of Indiana*, 1995 WL 129229 (N.D. Cal. 1995)(Dawn-to-dusk curfews imposed to reduce the possibility of rioting and looting were held not to constitute an order by civil authority specifically prohibiting access to a movie theater); *54th St. Ltd. Partners, L.P. v. Fid. and Guar. Ins. Co.*, 306 A.D.2d 67, 763 N.Y.S.2d 243, 244 (1st Dep't 2003)(holding that a civil authority provision applied only to the two days when access to the premises was denied and did not apply to the days thereafter because although vehicle and pedestrian traffic to the premises was diverted, access was not denied to the public, employees, or vendors); *St. Paul Mercury Insurance Company v. Magnolia Lady, Inc.*, 1999 WL 33537191 (N.D. Miss. 1999)(No coverage when state authorities hampered access to claimant's casino-hotel by closing a damaged bridge, because the casino-hotel was accessible in other ways during the period of time when the bridge was under repair).

In contrast to the above-cited cases, courts have held that access to an insured premises is "prohibited" where the order or action of civil authority actually requires the

---

[4] In *Abner*, access to the plaintiff's business premises in New York City was prohibited by civil authority following the 9/11 attacks. The court held the "civil authority" provision was unambiguous and was applicable only to the four days access to the premises was completely prohibited by the order. *Id.*, at 336-37. After the no-access order was lifted, pedestrian access to the premises was permitted and public transit was available. *Id.*, at 333. The court held coverage was not available for the time the civil authority lifted the no-access order, even though vehicular traffic was restricted in the area and "put a crimp in the ability of [the plaintiff's] Chairman to use his car and driver, and walking and public transportation were not palatable alternatives." *Id.*, at 333-34, 336.

insured's business premises to close, thereby invoking coverage for business losses.  *See, Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga.App. 35, 593 S.Ed.2d 7, 7-9 (2003)(County order to evacuate as Hurricane Floyd approached required closure of plaintiff's restaurant, and coverage therefore existed under Civil Authority Clause); *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, 2002 WL 31247972, at *4 (E.D. Pa. 2002)(Order of town authorities directed plaintiff to suspend plant operations due to Hurricane Floyd);[5] *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 46 Mich. App. 758, 208 N.W.2d 569, 570 (1973)(governor mandated closure of all places of amusement, including plaintiff's bowling alleys, restaurants, taverns and motels, due to rioting after assassination of Dr. Martin Luther King, Jr.); *Altru Health System v. American Protection Insurance Co.*, 238 F.3d 961 (8th Cir. 2001)(Claim for business interruption was covered (although limited by the policy's flood submit) where the state health department ordered hospitals to evacuate and close during a flood when the city's water supply failed).

---

[5] In *Narricot*, the plaintiff sued for business losses it sustained at two of its locations stemming from Hurricane Floyd.  One of its plants was located in Tarboro, North Carolina.  In that Town, the mayor not only declared a state of emergency but also suspended the operation of all plants, including the plaintiff's.  The Town Manager also had city employees "hand-deliver a letter to each industrial plant saying that they could not operate because of the water system being down."  In addition, access to the road on which plaintiff's facility was located was prohibited, and law enforcement and highway patrol officers were stationed at each entrance to the road barring travel.

The plaintiff's other plant was located in Boykins, Virginia, which was also impacted by the hurricane.  In that county, a state of local emergency was also declared, and roadway travel was limited to emergency personnel.  The county issued advisories telling the public not to use the roads because of flooding.  The prohibitions were never formally rescinded, but when the roads became passable, the public started using them again.  The county also specifically ordered the plaintiff to suspend the operations of its plant in that town.

The court held that the plaintiff's business and extra income expense losses caused by the two cities' prohibition of access to the plants were covered.  While the facts relative to the plaintiff's Boykins, Virginia plant initially appear to be similar to the present case, in that an advisory was given to the public not to use the roads which were never formally rescinded, the Court nevertheless finds that the case is distinguishable because the plant in that case was formally ordered to suspend its operations, while, in the present case, Kean Miller was not even informally advised to suspend operations or denied access to its premises.

Considering the above jurisprudence and interpreting the phrase "prohibits access" in accordance with its everyday meaning, the Court finds that Kean Miller has failed to produce sufficient summary judgment evidence demonstrating that the Civil Authority Clause at issue was triggered by the advisories and recommendations given by local authorities.  The Court certainly finds it unfortunate that such is the case since, in closing its business on August 29, 2005, Kean Miller was merely seeking to comply with the recommendations of local officials to stay off the streets if possible, and the Court notes from its own experiences following Hurricane Katrina the difficulties in navigating Baton Rouge, Louisiana, at the time as a result of downed trees and power lines, lack of operational traffic signals, and an influx of emergency vehicles beginning to bring in residents from the New Orleans, Louisiana, area.[6]

Nevertheless, even if unfortunate, the Court is required to follow Louisiana law on the interpretation of contracts and to consider the strongly persuasive jurisprudence before it.  The unambiguous language of the contract requires that access to the insured premises be "prohibited" by civil authority.  "Prohibited," as explained in *Southern Hospitality* means more than mere hampering or limitation, it means to "formally forbid" or "prevent."  *Southern Hospitality*, at 1140, quoting *Oxford American Dictionary and Language Guide* 795 (1999). "Access" means "a way of approaching or reaching or entering."  *Id.*  In light of the evidence presented, the Court cannot find that the civil authorities formally forbade or prevented Kean Miller employees from approaching, reaching, or entering its business premises on

---

[6] The Court further notes that much of Baton Rouge was without power on August 29, 2005, and it is conceivable that Kean Miller's offices may not have been operational on that date, even if employees could access the building, due to a lack of electricity.

August 29, 2005.  There is no evidence of road blocks or street closures preventing access

to Kean Miller's building; yet, there is evidence that two of Kean Miller's employees were

able to enter the business premises on the very day for which Kean, Miler claims business

income losses.  Under the circumstances, there does not appear to be a "direct nexus"

between the civil authorities' advisories and access to Kean Miller's premises.  Accordingly,

National Fire's motion for summary judgment should be granted, dismissing Kean Miller's

claim because its business losses are not covered under the Civil Authority Clause.[7]

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Partial Summary

Judgment (R. Doc. 8) filed by plaintiff, Kean Miller, Hawthorne, D'Armond, McCowan &

Jarman, L.L.P., be **DENIED**, and that the Cross-Motion for Summary filed by defendant,

National Fire Insurance Company of Hartford, be **GRANTED**, dismissing Kean Miller's

claims with prejudice.  The Court further recommends that the Motion for Oral Argument

(R. Doc. 24) filed by National Fire be **DENIED AS MOOT**.

Signed in chambers in Baton Rouge, Louisiana, August 2, 2007.

                                             **MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[7] Because the Court is able to render a recommendation concerning these motions based upon the parties' written briefs, National Fire's motion for oral argument will be denied as moot.